IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-541-FL

| | | |
|---|---|---|
| BILLY JAMES BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE 21, 29).[1] In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court grants defendant's motion, denies plaintiff's motion, and upholds the final decision of the Commissioner of Social Security ("Commissioner").

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on March 3, 2009, alleging disability beginning November 27, 2008. This application was denied initially and upon reconsideration. Hearing was held before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled during the relevant time period in a decision dated January 4, 2011. On June 22, 2012, the Appeals Council denied plaintiff's request for review of the ALJ decision, and plaintiff filed this action on August 21, 2012, for review of the final decision of the Commissioner.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin, Acting Commissioner of Social Security, has been named as defendant in this case in place of former Commissioner Michael J. Astrue.

# DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff was not engaged in gainful employment. At step two, the ALJ found that plaintiff had the following severe impairments: thoracic facet joint syndrome, bulging discs,

2

depression, obesity and sleep disturbance. However, at step three, the ALJ further determined that plaintiff does not have an impairment or combination of impairments severe enough to meet or medically equal one of the impairments in the regulations. Prior to proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to the following limitations: (1) plaintiff "must be given the opportunity to switch from sitting to standing every 30 to 45 minutes"; (2) must be "restricted to performing work entailing three- or four-step operations that [plaintiff] can learn over a period of time"; and (3) must not be exposed to "hazards such as dangerous machinery." The ALJ determined that plaintiff could not perform his past relevant work, but that plaintiff could adjust to the demands of other employment opportunities existing in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff was not under a disability during the relevant time period.

B.  Analysis

Plaintiff raises three assignments of error in his motion. First, plaintiff argues that the ALJ selectively relied on portions of Dr. Robert J. Wilson's medical opinion without sufficient explanation as to why the entire opinion was not accepted. Second, he maintains that the ALJ failed to apply adequately the factors in 20 C.F.R. § 404.1527 to Dr. Joey Thomas' medical opinion. Third, plaintiff contends that the ALJ improperly evaluated plaintiff's credibility. Finally, plaintiff asserts that there is new and material evidence requiring remand.

1.  Dr. Robert J. Wilson's Medical Opinion

Plaintiff contends that the ALJ erred by improperly relying on portions of Dr. Robert J. Wilson's medical opinion without explaining why the entire opinion was not accepted. Generally,

a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). A treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." Id; see also 20 C.F.R. § 404.1527(c)(2). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d at 178 (quoting Craig, 76 F.3d at 590) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. Id.

"Additionally, the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is reserved for the Commissioner." Parker v. Astrue, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011); see also 20 C.F.R. § 404.1527(d)(1). The Commissioner will use medical sources to provide evidence "on the nature and severity of [a claimant's] impairments," but determination of a claimant's residual functional capacity is a matter reserved for the Commissioner. 20 C.F.R. § 404.1527(d) (2).

Plaintiff assigns as error the ALJ's treatment of the medical opinion provided by Dr. Robert J. Wilson of Triangle Orthopaedic Associates, P.A. ("Triangle Orthopaedics"). A board-certified specialist in pain medicine, pain management, and physical medicine and rehabilitation, Dr. Wilson stated on November 10, 2009:

4

> In regards to disability issues and reviewing his physical findings as well as the MRI findings[,] I would state from objective standpoint he could like [sic] do sedentary to light activities. I would state he can lift 15-20 lb occasionally and I would avoid repetitive lifting, bending, twisting activities. Sit, stand, walk as tolerated; however, states with prolonged activities he has aggravation of pain and suggest every one to two hours he needs frequent rest breaks and change of position. He is somewhat concerned as he is not sure he can perform these physical activities on a long term basis; however, I have no other objective findings to further limit his activities or function. I have suggested possible reevaluation [sic] Dr. Joey Thomas, his pain physician in Roanoke Rapids, NC or other second opinion for disability evaluation should he have other providers he wishes to see.

(Tr. 587 (emphasis added)). The ALJ accepted the collective opinions of the doctors plaintiff saw at Triangle Orthopaedics and stated that those records contained "the most convincing opinions as the physicians there point to objective medical testing and scans, from which they find only limited causation for the claimant's alleged pain." (Tr. 31). The ALJ goes on to state that "[t]heir functional assessments show the claimant retained significant range of motion, and they found the claimant capable of sedentary work." (Id.).

In his decision, the ALJ meticulously outlined the evidence contained within the medical record. With regard to the records from Triangle Orthopaedics, the ALJ noted that Dr. Wilson opined that plaintiff could likely do sedentary to light activities. Other medical records indicate plaintiff had good motion in his spine, could walk on his heels and toes, and x-ray views of his thoracic spine were "basically normal." (Tr. 476). The records indicate that plaintiff has slight scoliosis, minimal degenerative changes in his lumbar spine and normal alignment. (Id.). X-rays obtained shortly after plaintiff's fall revealed no compression deformities or disc herniation or protrusion, and the CT of his lumbar spine was "essentially negative." (Tr. 239). On July 17, 2009, Dr. Dimmig, also of Triangle Orthopaedics, stated:

5

> I do not have a source for this patient[']s pain. His X-rays and MRI scans are normal. His pain is not discogenic in my opinion. At this point in time, I recommend rehab medicine consultation since there is not much else I can do for him. . . .

(Tr. 477).

Upon review of the record in this case, there is no objective medical evidence to support a finding that plaintiff requires frequent breaks from work. While Dr. Wilson notes plaintiff's statement that he has pain with prolonged activities, and while Dr. Wilson notes a suggestion of frequent breaks, this suggestion is not supported by medically acceptable clinical and laboratory diagnostics. Rather, the suggestion only is tied to plaintiff's subjective complaints of pain following prolonged periods of activity. In determining plaintiff's RFC, the ALJ did not adopt a requirement of frequent breaks, but he did take into account Dr. Wilson's evaluation by limiting plaintiff to sedentary work even though the objective medical evidence shows only slight scoliosis and mild degeneration of plaintiff's lumbar spine. He also accounted for plaintiff's need to change position by including a sit/stand option every thirty to forty-five minutes. Thus, the ALJ appropriately considered Dr. Wilson's evaluation in making his RFC determination.

2. Dr. Joey Thomas' Medical Opinion

Plaintiff argues that the ALJ erred by failing to apply adequately the factors in 20 C.F.R. § 404.1527 to the medical opinions of Dr. Thomas, a board-certified anesthesiologist who treated plaintiff from December 2008 to April 2009. Plaintiff asserts that, in so doing, the ALJ "significantly mischaracterized the evidence."

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must determine the weight to be given the opinion, considering the following factors: (1) the

6

length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) any specialty or expertise of the treating physician; and (6) any other factors tending to support or contradict the physician's opinion, such as the extent of the physician's understanding of the Social Security disability programs and the physician's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(2)-(6); see also Parker, 792 F. Supp. 2d at 894.

In the present case, the ALJ reviewed plaintiff's medical records produced by Dr. Thomas. ( Tr. 27-28). On March 17, 2009, Dr. Thomas wrote:

> The patient is unable to do any work including prolonged standing, sitting, turning, twisting, walking, lifting, etc., because of pain and he is currently out of work. Previously, I filled some of his papers in which I wrote the patient is partially disabled. That needs to be corrected and to be read as totally disabled for the time being. He has good potential for recovery, but for all practical purposes the patient is fully disabled at this time.

(Tr. 27, 218). As noted by the ALJ, treatment notes from that visit indicate that Dr. Thomas "placed [the claimant] on out of work till 03/30/2009." (Id.). In March 2009, Dr. Thomas referred plaintiff to the Hey Clinic for surgical evaluation. CT scans of the thoracic spine showed "slight bulges but no stenosis" and it was determined that "[t]his was not a surgical problem at this time." (Tr. 28, 242-43). Over the course of the treatment relationship, Dr. Thomas performed several thoracic facet medial branch blocks. (Tr. 28). Dr. Thomas also provided an evaluation of plaintiff, reporting that he was

> not able to stand for any length of time, every 10 to 15 minutes, sit, walk, climb, and reaching above the level of his shoulder. Squatting and climbing all of them are a no-no for this patient. Bending forward increases his pain significantly. The only

7

thing not affected is his finger dexterity.

(Tr. 28, 213). At plaintiff's last visit, Dr. Thomas noted that plaintiff had reached maximum medical improvement and was "totally disabled for the work he has been doing before." (<u>Id.</u>).

In July 2009, plaintiff's care was transferred to Triangle Orthopaedics. The physicians there reported that plaintiff's spinal x-rays appeared normal and there was only slight scoliosis and minimal degenerative changes in plaintiff's lumbar spine. (Tr. 476).

The ALJ evaluated Dr. Thomas' opinion as a treating physician, stating:

> Dr. Joey Thomas, M.D., who was also a treating physician, said the claimant is completely disabled. Dr. Thomas' opinion, however, not only encroaches into the disability determination realm reserved for the Commissioner, but also contradicts his own treatment plan and longitudinal medical record. Consequently, the undersigned has accorded little weight to Dr. Thomas' ultimate conclusions.

(Tr. 31 (internal citations omitted)). Given the existence of objective medical evidence that is inconsistent with Dr. Thomas' opinion, the ALJ was not required to give Dr. Thomas' opinion controlling weight, but possessed the discretion to decide how much weight should be given. In his decision, the ALJ referred to Dr. Thomas' opinion and treatment notes and duly considered Dr. Thomas' opinion in light of the evidence. The ALJ noted both Dr. Thomas' statements concerning plaintiff's disability, as well as the fact that plaintiff's test results were mostly normal except for some minor anomalies on his MRIs and x-rays. (Tr. 28). As required by 20 C.F.R. § 404.1527, the ALJ noted that Dr. Thomas was a board-certified anesthesiologist and explained the treatment claimant received from Dr. Thomas over the span of several visits. (Tr. 27-28). The ALJ also noted inconsistencies within Dr. Thomas' own treatment notes and the x-rays and MRIs included within his records. (Tr. 28, 31). There were also inconsistencies noted in the ALJ's decision between Dr.

8

Thomas' statements that plaintiff was disabled and Dr. Wilsons's statements that plaintiff was capable of sedentary to light activities. (Tr. 27-28, 30). Thus, the ALJ adequately analyzed Dr. Thomas' medical opinion using the factors as required under 20 C.F.R. § 404.1527(c).

3.      Plaintiff's Credibility

Plaintiff contends that the ALJ improperly evaluated his credibility by failing to consider plaintiff's persistent efforts to obtain relief from his symptoms. In assessing a claimant's credibility, the ALJ must follow a two-step process. First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. Craig, 76 F.3d at 594-95. Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms. Id. at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and . . . be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). In addition to the objective medical evidence, the ALJ must consider the following when assessing the intensity and persistence of a claimant's pain and other symptoms:

   (1)   Claimant's daily activities;
   (2)   The location, duration, frequency, and intensity of . . . pain or other symptoms;
   (3)   Precipitating and aggravating factors;
   (4)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate pain or other symptoms;
   (5)   Treatment, other than medication, received for relief of pain or other symptoms;
   (6)   Any measures used to relieve pain or other symptoms; and
   (7)   Other factors concerning functional limitations and restrictions due to pain or other symptoms.

9

20 C.F.R. § 404.1529(c)(3) (2013); SSR 96-7p, 1996 WL 374186, at *3. "Factors [used] in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant." Felton-Miller v. Astrue, 459 Fed App'x 226, 229 (4th Cir. 2011).

The ALJ followed the two-step process for assessing plaintiff's credibility, first examining whether plaintiff's medically determinable impairments could reasonably cause plaintiff's symptoms. Finding that they could, the ALJ then went on to evaluate plaintiff's credibility regarding the alleged symptoms. Plaintiff argues that in making the credibility determination, the ALJ did not consider plaintiff's persistent efforts to obtain relief from pain in accordance with SSR 96-7p. However, a majority of the ALJ's decision is spent painstakingly analyzing plaintiff's medical records produced from his numerous medical appointments over the span of three years. A large number of these visits were for the assessment and treatment of plaintiff's pain. The ALJ noted that plaintiff took multiple medications to help manage pain, that he received a number of epidural injections, that he was referred for a consultation to determine whether surgery was an option to relieve his pain, and that plaintiff attended physical therapy to lessen his pain. (Tr. 27-28, 30-31). The court finds no basis for plaintiff's argument that the ALJ failed, when evaluating plaintiff's credibility, to consider plaintiff's persistent efforts to obtain relief from his symptoms.

IV.   Veteran's Administration Rating Decision

Plaintiff's final argument is that a disability rating decision issued by the Veteran's Administration ("VA") on August 24, 2011, is new and material evidence that requires remand in

order for the decision to be given consideration by the Commissioner. With respect to this assignment, plaintiff relies on Section 405(g), which authorizes the court to remand a case for new and material evidence when the claimant shows good cause that the evidence was not previously presented or incorporated into the record. See 42 U.S.C. § 405(g).

In this case, the ALJ considered that on August 7, 2002, the VA had assigned plaintiff a combined disability rating of seventy percent for "service connected bilateral ankle ligament strains, bilateral retropatellar pain syndrome, right trochanteric bursitis, a right thigh scar, left shoulder bursitis, bilateral hearing loss, tinnitus and a scar of the third finger of the claimant's right hand." (Tr. 27). Subsequently, the VA issued a new rating decision, dated August 24, 2011, increasing plaintiff's disability rating to eighty percent effective July 29, 2009. The VA assigned a twenty percent disability rating to plaintiff's muscular low back pain (a disability not previously established) and a ten percent disability for plaintiff's right shoulder bursitis (which had previously been assigned a disability rating of zero). Additionally, the VA increased the disability ratings for plaintiff's left knee patellofemoral syndrome from ten to twenty percent, continued prior disability ratings of ten percent each for plaintiff's chronic right ankle sprain with early degenerative changes, left ankle sprain with early degenerative changes, left shoulder bursitis, right knee patellofemoral syndrome, and right hip bursitis. The VA assigned a zero disability rating to plaintiff's finger laceration with scar, revoked its prior disability ratings for bilateral hearing loss as being made in error, and deferred action on plaintiff's request for increased disability ratings on his right thigh laceration with scar, right chest area injury, cervical spine injury, and intermittent bilateral tinnitus. Ultimately, the VA determined that plaintiff is not entitled to individual unemployability because he is capable of

11

gainful employment. In this regard, the VA's new rating decision states:

> After reviewing your current status of your service connected disabilities, the VA examiner noted that you could be employed in a sedentary job with limited requirements for lifting and carrying. The VA examiner also noted that you should work between the waist and shoulders and should not be employed driving or operating heavy or rapidly moving equipment. Therefore, entitlement to an increased evaluation based on unemployability had not been established.

(Pl.'s Mem. Sup. Mot. J. Pleadings, Ex. 1A at 16).

The Commissioner argues that remand is not appropriate in this case because the August 2011 VA rating decision is not material and plaintiff has not shown good cause for his failure to present the evidence earlier. Evidence is material for purposes of § 405(g) if there is a reasonable possibility that it would have changed the ALJ's disability determination. Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir.2011) (citing Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir.1991)). The Commissioner argues that plaintiff is unable to show materiality as a result of an increase of only ten percent in his disability rating and because the VA's decision finding plaintiff capable of gainful employment is consistent with the ALJ's decision.

The court need not reach the question of materiality, however, because plaintiff has not met his burden of demonstrating good cause for his failure to present the evidence earlier. See 42 U.S.C. § 405(g) (requiring good cause); Melkonyan v. Sullivan, 501 U.S. 89, 99 (1991) (stating that "'good cause' for the failure to present the additional evidence in the prior proceeding" is required for remand pursuant to sentence six of § 405(g)). Although not issued until after the ALJ's decision, the VA rating decision was issued almost ten months before the Appeals Council's decision on June 22, 2012. In his brief, plaintiff asserts that he did not receive the new rating decision until after the Appeals Council had denied review, but he provides no evidence or explanation to support his assertion that the decision was not timely received. Where plaintiff has failed to show good cause

12
Case 5:12-cv-00541-FL   Document 33   Filed 02/25/14   Page 12 of 13

for his failure to present evidence of the VA rating decision to the Appeals Council, remand is not warranted.

## CONCLUSION

Based on the foregoing, the court DENIES plaintiff's motion for judgment on the pleadings (DE 21), GRANTS defendant's motion for judgment on the pleadings (DE 29) and AFFIRMS the final decision of the Commissioner. The clerk is directed to close this case.

SO ORDERED, this the 25th day of February, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge